## OTIS *v.* SPRAGUE.

1. DEEDS—FAILURE TO RECORD—EXECUTION LEVY.
   An unrecorded deed is good as against an execution levy, in the absence of fraud.

2. SAME—QUALIFIED CONVEYANCE—EVIDENCE.
   The facts that a deed from husband to wife was executed during the former's illness, that it was withheld from record until shortly before the maturity of an obligation incurred by the husband after the execution of the deed, and that he in the meantime effected insurance upon the premises in his own name, and retained their management, are not conclusive that it was a qualified conveyance, to take effect only in case the wife survived him, where a prior promise to convey to the wife absolutely in consideration of her caring for his mother, and the rendition of the service contemplated, are clearly shown.

Appeal from Ionia; Davis, J. Submitted June 14, 1898. Decided July 18, 1898.

Bill in aid of execution by Amos E. Otis against Alexander Sprague and Sarah M. Sprague. From a decree for complainant, defendants appeal. Reversed.

*R. A. Hawley*, for complainant.

*McGarry & Nichols* (*Allen B. Morse*, of counsel), for defendants.

HOOKER, J.   The defendants appeal from an adverse decree of the circuit court, upon a bill filed in aid of execution.   The judgment upon which the execution issued was upon a promissory note given by Henry Sprague, for money borrowed from the plaintiff, the defendant Alexander Sprague being an accommodation maker.   The evidence shows that the defendants are husband and wife, and that in the year 1879, while they were living upon the premises in controversy, which then belonged to said Alexander Sprague, his mother was a paralytic, living at the home of Henry Sprague, where she remained four or five weeks after her attack of paralysis.   At that time the wife of Henry refused to care for her longer, and at her husband's request, and upon his promise to deed to her the place by way of compensation, Sarah Sprague, the defendant, consented to permit the mother to be brought to the home of the defendants, and promised to care for her as long as she should live, which she faithfully did.   In 1881, Alexander Sprague, the husband, being in an enfeebled condition, and sick, and, according to the testimony of Mrs. Sprague, worried over the condition in which his wife and mother would be left if he should die, expressed regret that he had not made the deed as promised; and, as soon as he recovered sufficiently, he executed a deed of the premises, and gave it to his wife, who had it in her possession at all times thereafter.   At that time he was not in debt.   The note was made in November, 1894, and fell due November 30, 1895.   The deed was recorded October 11, 1895.

The complainant's counsel does not contend that the deed was executed with a fraudulent intent, but asserts that the evidence shows that it was in the nature of a testamentary disposition of the property, made at a time when Sprague's mother was, and might continue for an indefinite period, dependent upon his wife, and when it is said the parties believed his brother, Henry, would be his sole heir, and that it was given and received with the agreement on the part of the wife that it was to be kept off record, and not

to take effect if the husband survived the wife. As evidence of this, our attention is called to the failure to record this deed, while in other cases, where land was afterwards purchased by the defendants, the deeds were immediately recorded; to the illness of Sprague, and his fears; to the borrowing of money upon Sprague's note, secured by a mortgage on the place, to pay an outstanding mortgage; the payment of this last mortgage from the pension received by Sprague; the subsequent insurance of the buildings on the farm in the name of Sprague; the management of the farm and business by Sprague, and in his name; and the erection of buildings thereon, and alleged haste to record the deed, shortly before the note matured. On the other hand, the agreement to deed to the wife, and the subsequent performance of the promise, the immediate delivery of the deed, and the wife's subsequent and absolute control of it, are shown by their testimony; and a number of relatives testified to their understanding that this deed had been made. The testimony of. the wife is such as to carry conviction to our minds that it was the understanding of the parties that the deed should convey to her an unqualified title, and the conduct and management of the farm afterwards was not so out of the usual order in such cases as to militate strongly against the defendants' claim.

If it be determined that the deed was delivered without condition or restriction, it conveyed an absolute title, which could not be affected by the fact that the husband some years later signed and did not pay the note in question. If the land was hers, it could not be made subject to the execution because she did not pay a valuable consideration for it (if she did not); nor did her failure to record her deed in any way increase her liability, as an unrecorded deed is good as against an execution levy, in the absence of fraud. It is unfortunate that the plaintiff should lose his earnings, but, being convinced that the wife has an honest title to the land, we cannot justly require her to pay the husband's debt. *Barkworth* v. *Palmer, ante,* 50, and cases cited.

The decree of the circuit court is reversed, and a decree will be entered in this court dismissing the complainant's bill, with costs of both courts.

The other Justices concurred.